UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARCHAN ADKINS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 17-cv-1293 |
| STEVE KALLIS, | ) |
| Respondent. | ) |

## ORDER & OPINION

This matter is before the Court on a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 filed by Marchan Adkins. The motion has been fully briefed. For the reasons stated below, the motion is DENIED.

### BACKGROUND

On July 30, 2014, Petitioner Marchan Adkins pleaded guilty to possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I). *United States v. Adkins*, 13-cr-50039 (N.D. Ill. 2014) (Doc. 28). Adkins was sentenced to 120 months in prison. *Id.* (Doc. 37).

On June 9, 2015, Adkins "brushed" against the left shoulder of a prison staff member at FCI Oxford, where he was incarcerated at the time. As a result of the incident, Adkins was charged with assault and insolence towards a staff member in violation of BOP Code. On June 16, 2015, the prison's Unit Discipline Committee ("UDC") held a hearing in Adkins' presence. (Doc. 1 at 11). The UDC then referred the charges to the Discipline Hearing Officer ("DHO") for further hearing, with

recommended sanctions of loss of good-time and loss of phone and commissary privileges. *Id.* On July 7, 2015, after a hearing, the DHO found that Adkins committed the prohibited acts. *Id.* at 14. As to the assault charge—the only charge Adkins challenges in the instant petition—Adkins lost 14 days of good-conduct time, and 30 days of email and phone privileges. *Id.*

On June 23, 2017, Adkins filed the instant petition pursuant to 28 U.S.C. § 2241 arguing that the BOP denied him due process because his DHO hearing was not fair and impartial, and because he was not allowed to procure medical records to show he was legally blind in his right eye. He also contends that he is actually innocent of the assault charge. The Government has filed its response and Petitioner filed a reply. Thus, this matter is ripe for decision.

## **LEGAL STANDARDS**

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a petitioner is challenging the fact or duration of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000). Because the loss of good-conduct time impacts Adkins' release date, he correctly pursues relief under § 2241. *See id.*; *Waletzki v. Keohane*, 13 F.3d 1079, 1080-83 (7th Cir. 1994).

"Federal inmates must be afforded due process before any of their good-time credits—in which they have a liberty interest—can be revoked." *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). "In the context of a prison disciplinary hearing, due process requires that the prisoner receive (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present

2

documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.* "A disciplinary decision must also be supported by 'some evidence' to satisfy due process." *Id.* (citing *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). "Some evidence" is not a high standard; "it entails less than the 'substantial evidence' standard commonly used in administrative law, and materially less than the 'beyond a reasonable doubt' standard used in criminal proceedings." *Grandberry v. Smith*, 754 F.3d 425, 426 (7th Cir. 2014).

## DISCUSSION

Adkins argues that he was denied due process at his disciplinary hearing because he was not given a fair and impartial hearing, and he was not allowed to procure medical records to show he was legally blind in his right eye. (Doc. 1 at 7). Adkins further contends that he is actually innocent of the assault charge because he did not have the requisite intent. *Id.* In his reply brief, Adkins also argues that he was "not provided with the requested staff member to visit him" before the hearing and "explain the procedure." (Doc. 5 at 2).

First, Adkins' argument that his DHO hearing was not fair and impartial is dismissed as conclusory. In his petition, Adkins alleges that he "was not given a fair and impartial DHO hearing," but he does not further explain or develop this argument. Unsupported suppositions and conclusory allegations are insufficient to obtain habeas review. *See Blintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005)

(dismissing arguments on habeas review that petitioner failed to develop); *Paters v. United States*, 159 F.3d 1043, 1053 (7th Cir. 1998). The Court will not consider this argument any further.

Next, Adkins argues that he was not allowed to procure medical records for the hearing to show he was legally blind in his right eye. Relatedly, Adkins argues that he is actually innocent of the assault charge because, as he is blind in his right eye, he could not see the BOP staff member and therefore did not intend to brush up against her. These arguments fail in several respects.

It appears that the DHO did in fact consider Adkins' vision issue, though it rejected that defense as implausible. Adkins did not mention right-eye blindness as a defense during the initial UDC hearing. The written statement Adkins provided at the UDC hearing stated, "I didn't know I bumped into her. I finished my workout and headed to the wellness area, Miss Ruesnick called me over to her and said check yourself, you almost brushed into me when you were running. I apologized for bumping into her." (Doc. 4-2 at 6). Adkins also provided a written statement to the DHO, but it did not mention his vision impairment. (Doc. 4-2 at 16). Adkins only verbally brought up his vision issue at the hearing before the DHO, which the DHO rejected as implausible:

> [Y]our statement of not being able to see out of your right eye so you do not know if you brushed her is not plausible. Specifically, you did not bring this defense during the Lieutenants investigation, or the UDC hearing, and you provided no medical documentation of a medical condition to consider, as well as brushing past someone is touch and not sight, therefore you would know.

(Doc. 4-2 at 11).

4

Furthermore, due process only requires that inmates be given an opportunity to present documentary evidence and the record shows that Adkins was provided that opportunity. Before his hearing, Adkins was provided with a list of his rights, which included "[t]he right to call witnesses . . . and to present documentary evidence in [sic] your behalf, provided institutional safety would not be jeopardized." (Doc. 4-2 at 8). Adkins' signature appears at the bottom of the page, acknowledging that he was advised of his rights before the hearing. *Id.* The record does not show that the DHO *prevented* Adkins from presenting medical evidence of his vision issue. For example, the record does not show that Adkins requested his medical records and that the DHO denied his request.

Adkins' own statements undermine his argument that he was in any way prevented from presenting medical records at his hearing. In his letter appealing the DHO's decision, Adkins stated:

> The D.H.O. Officer stated that I provided no medical documentation of my condition or use this defense during my previous hearing, so this factor was not considered. This is 100% not true. I did not provide medical documentation because my staff rep. and other staff involved were well aware of my condition. Furthermore, I was unaware that I would need any specific documentation being that staff would investigate my medical records.

(Doc. 4-2 at 19). In his petition, Adkins argues that evidence of his blindness was "well within the B.O.P.'s own computer records, and could be verified at almost any time." (Doc. 1 at 7). Thus, it appears that Adkins was not prevented from presenting documentary evidence at his hearing; rather, he is claiming that the onus was on BOP to investigate Adkins' records.

5

While *Brady v. Maryland*, 373 U.S. 83 (1963), requires prisons to disclose material exculpatory evidence in prison disciplinary proceedings unless such disclosure would unduly threaten institutional concerns, *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), Adkins' right-eye blindness lacked exculpatory value. In *Jones v. Cross*, the Seventh Circuit dismissed a prisoner's claim that he did not intend to assault a BOP staff member because lack of specific intent is not a defense in a prison disciplinary action. 637 F.3d at 847. Because Jones' claimed defense—lack of intent—was not a valid one, none of the evidence he said should have been provided could be characterized as exculpatory. *Id.* at 848. "Only evidence that undermined or contradicted Jones's admission that he pushed Loftus would be exculpatory," and none of the evidence at issue, including Jones' medical records, did so. *Id.* Therefore, there was no due process violation. *Id.*

So to here, as the DHO explained in its written reasons for decision, assault is the "unconsented touching of another," and lack of intent is not a defense. (Doc. 4-2 at 11). Medical records showing that Adkins was blind in his right eye were therefore not exculpatory because they would not have undermined or contradicted the evidence tending to show that Adkins "touched" the staff member.

To reiterate, a disciplinary decision must be supported by "some evidence" to satisfy due process. Here, the DHO documented the evidence relied upon in Section V of the DHO report, which included the incident report, two staff memoranda, a written statement from Adkins, and a written statement from the inmate Adkins formerly requested as a witness. (Doc. 4-2 at 9-11). The supporting staff memoranda corroborated the incident report and described Adkins as running past staff, brushing

6

the shoulder of a staff member, and calling her "baby." *Id.* at 10. The DHO determined that the greater weight supported a finding that Adkins assaulted a prison staff member. *Id.* at 11. The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (citations omitted). Based on the incident report and the corroborating accounts from two other staff members, the Court finds that "there was some evidence from which the conclusion of the [DHO] could be deduced." *See id.*

Finally, in his reply brief, Adkins also contends that he was "not provided with the requested staff member to visit him" before the hearing and "explain the procedure." (Doc. 5 at 2). This argument is without merit, as the preliminary "Notice of Discipline Hearing Before the (DHO)" indicates that Adkins did not wish to have a staff representative at the hearing. (Doc. 4-2 at 13). Adkins' signature is present at the bottom of the Notice. *Id.* Section II of the DHO report also indicates that Adkins waived his right to a staff representative at the hearing. *Id.* at 9. Thus, the Court finds no merit to this claim.

In sum, the Court finds that Adkins was provided procedural due process at his prison disciplinary hearing before he lost 14 days of good-time credit. He was provided written notice of the claimed violation at least 24 hours before the hearing (Doc. 4-2, at 13), he was given an opportunity to call witnesses and present documentary evidence to an impartial decision-maker (Doc. 4-2 at 8), and Adkins was provided a written statement by the DHO of the evidence relied on and the reasons

for the disciplinary action (Doc. 4-2 at 9-12). Furthermore, the DHO's decision was supported by some evidence. Adkins' § 2241 Petition is therefore denied.

## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is DENIED.


Entered this 31st day of October, 2017.


                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                              United States Senior District Judge